Our next case for this morning is United States v. Clendenin, number 15-2450. You may. Good morning, and if it pleases the court, I'm interested more I represent Mr. Jace Clendenin Sr., who was charged with a firearm with an obliterated serial number. He asserted his innocence and demanded a trial by jury. He was afforded a trial by jury, through which he also had occasion to take the stand to explain the circumstances of how he came to be in possession of this particular firearm. It was a factual issue that we did not raise on appeal. The jury did not believe, apparently, that he was unaware that the firearm had the obliterated serial number. But there were some procedural issues that really, we feel, tested the parameters of constitutional law and federal criminal law. Well, one of them is during voir dire, and I assume this is where you're going to go first, you had suggested a voir dire question, which the judge did not give, but something about, you can tell me, but I have a question about it. Did any of the potential jurors have any strong positions on firearms such that it would make it difficult for them to be a jury? That's right. Now, my question to you is this. You know, the federal system has an awful lot of firearms cases. Are you looking for a black letter rule that says during voir dire, this is an appropriate question to ask in every case, and why would this case be any different than any other case? Your Honor, if I had done a Brandeis brief, you would see that in the Virgin Islands there's approximately 108,000 people. That would fit into three football stadiums in the Big Ten. You would also see that we average well over approximately 30 felonies, homicides a year. That's 30 homicides per 100,000 is a particularly significant number, and as you will see from what Prospective Juror 62 specifically said, she found a way to somehow address this particular problem in her mind to let it know, let the court know that she would have some difficulty with a case with an unregistered jury. Of course, the flip side to that is whatever was asked was effective because this juror got rooted out. Your Honor, I take issue with that position. What was said was, do any of you have any information about this case? Well, more than that, one of the questions asked was, do you know anybody that's been a victim of crime? And she didn't respond to that. So when later she comes up and says, I know six people who were killed, don't you think the district court judge might have thought, well, holy smokes, I asked if anybody knew of somebody who was a victim of crime, you knew six people that were shot, that sort of counts as a victim of crime. Why isn't that enough that the judge had asked a question that should have surfaced juror number 62's problems before, but she just didn't respond? Your Honor, there are sort of technical edges on these questions. For instance, that particular question is, have any of you been charged with, witnessed to, or the victim of a crime? It's conceivable she was not charged with or didn't witness it and wasn't the victim of the crime. And if she's taken an oath to try to answer these questions truthfully, perhaps she anticipated a more specific question. And when all the questions were asked, and we went back to sidebar, and the judge somewhat begrudgingly agreed to ask, do any of you have any information about this offense? And she raised her hand and came to sidebar, and that's when she expressed the fact that I don't believe that I could be fair and impartial with the fact that six of my friends, five or six of my friends, have been murdered. And that's why we needed, when she came to sidebar, to volunteer the information that she had a problem being a juror on a particular case involving firearms, that was like the clarion call. That in this particular case, not every felony gun case, in this particular case, this jury panel may need to be asked that specific question to better guarantee that my client was going to have a fair and impartial jury. It was a circumstance when you're balancing the constitutional right to the fair and impartial jury against, I submit, convenience. It was just going to take more time to ask. Isn't the catch-all question that all jurors get asked about your ability to be impartial, isn't that enough? Again, it's surface number 62. Your Honor, it wasn't a catch-all question on your ability to be impartial. It was a catch-all question of, do any of you know anything about this case? Her comment wasn't even responsive to that question. She was looking for the opportunity to express some heartfelt belief that at least she had on that panel that she was not going to be able to be a fair and impartial jury. I'm glad because it appears that she was not going to be fair and impartial as to my client. That's the other reason that I feel the particular question should have been specifically asked of the whole panel. Let me ask again what Judge Chigaris was, I believe, getting at. Are you asking for a black-letter law that any jury in the Virgin Islands that's looking at a firearms offense needs to be asked this question? Because firearms problems in the islands are just so severe that to fail to do that is a violation of due process. Your Honor, my case wouldn't be one for the black-letter law. In other words, the fact that the judge didn't ask the question the first time, that might go to what you're saying. But after the juror came up to say, I got a problem with anybody who's got an unregistered firearm, I can't do it because of all the homicide, all the murders. So your assertion is because one juror said it, then that means you've got to presume that there are other people on the jury who have a problem and who won't answer the general question about bias. That's the black-letter law you're looking for. If we were to write this case and rule for you, what would the rule look like? Would it say, well, you may not have to ask this in every case, but if one person raises it, then you have to ask it. Is that the rule you're looking for? Your Honor, the idea is not exactly what you're asking. I think that the judge has some discretion, except I asked that question. I asked the judge to ask that question because it was very specific to our theory of defense. My client wasn't going to deny having the gun. He was going to have the gun under circumstances that would go to the second part of the problem, which would be the jury instruction in which the juror could be instructed by the judge that if you find justification or if you find good faith, then you may find the defendant not guilty just for those reasons. So it was significant to my case, and it was doubly significant when this potential juror came up essentially sua sponte to answer a non-responsive question because the judge didn't ask that question. Well, I think we may have run at you a couple of times. I didn't. Judge Jordan did. If we're writing this thing again, what's the black letter rule here? This is a one-off in the circumstances presented here, very unique circumstances. It sounds like this is a more general problem that you're asking for a more general rule on. The idea would be I would like a black letter ruling specific to my case, but I don't believe it would be wrong for any case involving a gun for that particular question to be asked. Because it would assist the counsel in exercising peremptory challenges, even if that particular potential juror said I could be fair and impartial, but I have a problem with handguns. And the only justification, Your Honor, for not giving it is maybe in the interest of judicial economy or because we don't want to spend too much time on voir dire. And it's not perhaps if we ask this question this time, we might have to ask it all the time, and it's just going to slow up the wheels of justice. Well, the wheels of justice are supposed to take you to justice as a destination. And in my humble belief, the enforcement of constitutional rights, when balanced against expediency, should lean in the favor of the enforcement of constitutional rights. It sounds like you're saying this is a common problem or that this case is typical, not rare. Is that right? Well, Your Honor, it's typical because the community and I can't testify as to what's not on the record. We have a unfortunate problem with gun violence, and it's a judicial notice of it. All right, but if this is typical, then you have a problem because you run into our precedent in Butler where we said it is the rare case that the failure to ask a particular question has resulted in reversal. Are you asking us to take this case and bank and overturn Butler? This is a rare case I'm submitting to Your Honor. No, it's typical and rare. That's unusual. Rarely typical or typically rare. I believe that my client's situation is sufficiently unique as to require that. All right. All right. Then let's parse that a little bit. What is it about this case that makes it unique rather than just the sort of run-of-the-mill voir dire where, you know, some jurors are very forthcoming, others are very taciturn, most are somewhere in between? You know, what makes this case unique? Your Honor, when we speak of parsing it out, this is really a two-part voir dire problem. The first part, he didn't ask my question. All right, so be it. I preserve the objection. Maybe Butler's going to catch me in the dry on that one. But the second part, when a juror who has not been asked that question goes out of the way to come up, raise their hand to come forward, to respond nonresponsively, to explain that the guns caused her a significant problem, that's when the judge should have been, and he was asked, to please give that particular instruction because now this shows that that's a question that needs to be asked for this particular panel and in this particular case. My client has, there's no defense he didn't have a gun. There was no defense. So if a juror has some problem with guns right off the bat and can't be fair and impartial, I mean, many of them say we can be fair and impartial. I have to go back and use peremptory challenges after that. But it's a situation that I just wanted to advise the court that by the second part, you don't have to make black letter if you don't wish to on the whole question. But I do suggest respectfully that you have to make a reversal based upon the fact that after that lady, juror 62, came to the sidebar, that it called for, it required that instruction. Can I ask you about your, we're just down to a minute and a half here, and you've got a second argument, which is that there should have been a good faith instruction given. Why don't you respond, if you would, to a case of ours called United States v. Gross, dates from 1992 at 9-61-1097. We said, a good faith defense instruction is merely surplusage. And then a little further down said, the good faith instruction is simply a reiteration that the government must carry its burden in demonstrating that the accused acted knowingly and willfully. Why aren't we just controlled by that language that the court gave a knowingly and willfully instruction to instruct further about good faith would just be surplusage. It doesn't add anything. It's not already covered by knowingly and willfully. And by getting the jury to understand, they have to find the required state of mind. I did go through all of those at 5-07 in the standard jury instructions for the Third Circuit. And many of those were non-presidential. And the situation of, say, Butler having it as surplusage, it's not surplusage when you just add a different reason as to why you would not find that my client did something knowingly. When in reality, the particular good faith instruction or the justification instruction, which has a lower standard of proof, would be a total justification for the jury to be able to say, I'm going to find that he was acting in good faith. And they have the right in that instruction that says you must find the defendant not guilty if you believe they acted in good faith. What do we do with our own precedent that says a properly given knowing instruction about state of mind is sufficient to cover any arguments about good faith? If I may go on, Your Honor, it does not state, it doesn't draw the jury's attention to the fact that these instructions would authorize the jury in and of itself, if they believed he operated in good faith, then they could find the defendant not guilty. That part is not stated in the court's, the instruction that the court gave on knowingly. It doesn't go to that. I got you. Thank you. Thank you, Counsel. Good morning. May it please the Court. Good morning. As a part of the United States. You know, I think I'll start with the voir dire issue. Of course, the defendant is not entitled to a specific voir dire. And judges, of course, have a great deal of discretion as to what they actually ask. They do. I think in this case, this case was not some unique case with a unique set of facts. It was a basic possession of a firearms case. That's true. But can you address Mr. Moore's argument head on? He says, look, even if I'm, I took him to be saying, I'm not asking for a black letter law ruling that everything, this has got to be asked in every case. But we asked for it in this case because we were concerned. And then somebody came up and really put the court on notice that this was a problem. I mean, as he put it, in response to a different question said, I know people, a lot of people got shot. I don't think I could be fair. That should have prompted him to do something. When the judge is prompted like that, the law should require him to take the step and ask the question. I take that to be the defense's argument, and I'm wondering if you've got a direct response to that. My direct response would be that the trial judge asked the first, the general broad question. He littered across his void to the panel was, can you be fair and impartial? If someone has an issue with guns, so much so that they cannot be fair and impartial, that would prompt them to raise their hand and say, judge, this is a gun case. I cannot be fair and impartial. Well, if that's really it, because in the end, that's what you're trying to do is to see the fair and impartial jury. Is the government's position that all the judge, that really you'd only have to ask one question, Vardir, can you be fair and impartial, and if nobody said no, you'd be good? Well, you can ask that along with the nature of the offense that's being charged. So generally, you can be fair and impartial, and then you hear that this case involves a gun. And in your mind, well, I thought that could be fair and impartial, but now that it involves a gun, maybe I should raise my hand and bring it to the court's attention. I think that's what happened in this case. That's the question that he's asking. We wanted him to ask, can you be fair and impartial in a gun case? Now, he puts a slightly different spin on it and says, do you have strong feelings that would prevent you from being fair and impartial in a gun case? But that's the question he wanted asked, that specifically. Can you be fair and impartial in a gun case? And Judge Gomez wouldn't ask it. Should we be concerned about that? In my view, no. Specifically because, again, he wanted to specific, can you be fair and impartial in a gun case? But the questions that Judge Gomez posed to the prospective jurors were, can you be fair and impartial? And then he mentions that it is a gun case. That's what prompted, I think, juror 62 to approach and say, well, I have issues with guns. It is because of the specific question that the trial judge posed that prompted juror 62 to approach. Juror 62 did not approach after the inquiry about the general, can you be fair and impartial. He only approached when the judge indicated in voir dire that this is a gun case. Then he approached. Right, which is, I think, exactly defense counsel's point. I think defense counsel would say, yeah, that's what I'm saying. If the judge had said first, this is a gun case, can you be fair and impartial, we might have surfaced more people who had an issue with this. But that isn't how the judge asked it. The judge asked, can you be fair and impartial? People thought, yeah, I can be fair and impartial. Only then does the jury get the whiff, oh, we're in a gun case here, and it takes one particularly assertive juror to get up and say, well, you didn't ask me this, but I'm telling you now, and that shouldn't be the way it works. That's kind of the tenor of the argument we're getting. Should we be telling the district court judge and district courts generally, hey, tell people the nature of the crime, the case that they're dealing with, before you ask the general question so they understand the context in which you're asking them whether they can be fair and impartial. Is that something that we should be saying or not? Well, arguably, they may have run more efficiently if the judge had asked, had indicated that it's a gun case up front as opposed to the tail end. But the result is still the same. It prompted a juror to get up and approach the court and say, well, judge, I didn't understand previously that this is a gun case. Now I understand it's a gun case. I think I need to come forward and explain why I cannot be, why I may not be able to fair and impartial knowing now that this is a gun case. So in the end, I think defense got exactly what he was hoping to get. He was hoping to weed out individuals who had issues with guns, and that's exactly what happened. The judge on his own weeded that prospective juror out. I'm not sure that to require the judge to, depending on the nature of the case, to ask the specific questions the way defense counsel wants it asked, and in a time that defense counsel wants it asked, I don't think that's appropriate, given the broad discretion that this court reviews the actions of the trial judges who are here. How about the good faith instruction issue? Well, I think that was subsumed in the knowingly instruction. The judge indicated that he was trying to strike a balance. He was trying to be fair to both parties. But, you know, given the facts of the case, I think it's clear that the judge also indicated to defense counsel, you can argue. You can argue good faith. You can say basically whatever you want to explain to the jury on that issue. Given the facts of the case, you can go right ahead. And he did. So, again, he lost nothing. And, again, this was not a very difficult case for a jury to understand. Either this defendant had a firearm, or he didn't. Either he was going to turn it over to the cops, or he was going to keep it for himself. He testified. He had two witnesses who also testified. And, basically, there was no meat in there that would even have warranted a justification, instructions, or a very detailed knowing instruction, a good faith instruction. So, again, the trial judge, I think he got it right by giving a partial good faith instruction and also deciding not to give the justification instruction, which was not warranted by the evidence. I think in the reply brief of the defense, he says that instructions are earned. You don't get the instruction because you request it. You have to earn it. And you earn it based on the evidence that has been presented at trial. And, in this case, he did not earn a justification defense. He did not earn an elaborate good faith defense either. So I think the district court got it right, and the decision should be affirmed. Thank you, counsel. Thank you, Judge. If I may? Please do. Thank you, Your Honor. Hold on for a second. Ms. Glom, are you ready to go? Okay. Go ahead. Trying to get the extra time. Juror number 62, after she made her comments, the court excused her for cause. I wonder how many other people in that jury panel, the panel of the near persons, was going to or would have raised their hand to say they would have a problem being fair and impartial. It's not speculation. It's a great question, and we'll never know the answer. And you could say the same about every jury that we ever picked as lawyers and judges, couldn't you? No, Your Honor, I don't think so. It's the great unknown, the folks that come up. And, as I said before, some are very forthcoming. Others are reluctant. It's a hard thing picking a jury, whether you're the advocate or the judge, and you just want to make sure you get a fair and impartial jury in the box. And we don't have a way to force people to tell us everything they know about everything, right? But, Judge, when it comes to it, it's not merely speculation, because there's no way a defense attorney can protect against the circumstance that happened here. If you don't get the judge to ask that question of the rest of them, then it's not going to happen. I can't read it out, and I can't exercise my power. All right, so we're back to it being a necessary question in every gun case, really. Well, Your Honor, again, I didn't want to have to go that far, just in this particular case, when you have the situation we have. When someone comes forward to sort of highlight the issue. Yes, Your Honor. That's the secondary weed out for prejudice. On the good faith instruction, the court's solution was to just sort of hide it in with the definition of knowingly. That only goes to the mens rea part of it. But the good faith defense and the justification defense go to not just the mens rea, but also to the actus rea. In other words, it would tell the jury that it was okay for my client to pick up that gun for these reasons, and if they believed it, then they could use that alone to find my client not guilty. Your Honor, if I may just take one more step. When the government says that I was allowed to argue it, the court takes pains to tell the jury that the arguments of counsel is not evidence and you just can listen to them. So me telling the jury something about my good faith defense wouldn't be the same thing as the judge instructing the jury on the existence of the defense if they find it, and the consequences of that defense. Thank you. Thank you, counsel. We thank counsel for their excellent briefing and arguments, and we'll take the case.